**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **NEW DYNAMICS FOUNDATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 99-197 T** |
| | ) | **The Honorable Francis M. Allegra** |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SUPPLEMENTARY BRIEF FOR THE UNITED STATES**

The United States submits this Supplementary Brief, which responds to the questions set out in the Order of June 6, 2005.

1. What standard of review is to be applied by this court in determining whether declaratory judgment is appropriate in an action filed pursuant to 26 U.S.C. § 7428?

The Court is to make a *de novo* determination, based upon the administrative record, as to whether the applicant has established that it is in fact described in § 501(c)(3). Plaintiff bears the burden of proof by a preponderance of the evidence. The Court's review is *not* of the Commissioner's ruling, *per se*, and thus does not involve a determination of whether that ruling was correct, or supported by substantial evidence, or clearly erroneous, or an abuse of discretion or the like. The statute provides simply that, in a case of actual controversy, this court "may make a declaration with respect to such initial qualification." § 7428(a). We note that the statutory language describes the court's declaration to be "with respect to such initial qualification," rather than with respect to the Commissioner's determination. It is our view that

this leads to the conclusion that review is *de novo*, and the proceeding one in which the court must determine for itself whether the organization is described in § 501(c)(3).

The language in § 7428 may be contrasted with that of since-repealed § 7477, which provided for Tax Court review where the Commissioner had (for example) determined "that an exchange described in section 367(a)(1) is in pursuance of a plan having as one of its principal purposes the avoidance of Federal income taxes." § 7477(a)(1).[1/] Section 7477(a)(2)(A) specifically provided that in such an instance, the Tax Court's declaration should be "whether or not such determination is reasonable." The Tax Court explored this contrast with § 7428 in *Dittler Brothers, Inc. v. Commissioner*, 72 T.C. 896, 908-09 (1979), *aff'd*, 642 F.2d 1211 (5th Cir. 1981). Similarly, determinations under § 482 (allocation of income and deductions among taxpayers) or § 446(e) (change in method of accounting), involve instances where a matter has by statute been committed to the discretion of the Commissioner, and review is thus for arbitrariness or abuse of that discretion. See, e.g., *Lucas v. Kansas City Structural Steel Co.*, 281 U.S. 264, 271 (1930); *Ralston Development Corporation v. United States*, 937 F.2d 510, 513 (10th Cir., 1991); *Sandor v. Commissioner*, 536 F.2d 874, 875 (9th Cir. 1976).

We are aware of no case in which the question of the standard of review was either dispositive or extensively analyzed. In *Fund for the Study of Economic Growth and Tax Reform v. Internal Revenue Service*, 161 F.3d 755, 757-58 (note 5) (D.C. Cir. 1998), the court observed:

> There appears to be confusion about the standard under which lower courts review IRS determinations of tax exemptions under 26 U.S.C. § 7428 in terms of whether there ought be any deference given to the IRS. There are cases holding that the

---

[1/] Former section 7477 was added to the Code by section 1042(e)(1) of the Tax Reform Act of 1976, P.L. 95-600, and was repealed by section 131(e)(1) of the Deficit Reduction Act of 1984, P.L. 98-369.

> standard of review is *de novo*. *See, e.g., Basic Unit Ministry of Alma Karl Schurig v. United States,* 511 F.Supp. 166, 168 (D.D.C. 1981), *aff'd per curiam,* 670 F.2d 1210 (D.C. Cir. 1982). Other courts have said that the review is not *de novo,* but in the context of discussing the *scope* of review, rather than the *standard* of review. See, e.g., *American Campaign Academy v. Commissioner,* 92 T.C. 1053, 1063, 1989 WL 49678 (1989) ("In making our declaration, we do not, however, engage in a *de novo* review of the administrative record.... Rather, we 'base [our] determination upon the reasons provided by the Internal Revenue Service in its notice to the party making the request for a determination....' ") (quoting H.R.Rep. No. 94- 658, at 285 (1976), 1976 U.S.Code Cong. & Admin.News 2897, 3181). In the instant case, the question of deference to the IRS proves not to be significant because the district court agreed with the IRS under *de novo* review that the Fund did not qualify for tax exempt status under 501(c)(3). However, in a case where the district court (or the Tax Court or the Claims Court, as the case may be) disagreed with the IRS on the merits, it would be important for that court to determine what if any deference is due to the IRS's determination. Because we need not decide the question of the trial court's standard of review of IRS determinations in 501(c)(3) cases for purposes of this appeal, we leave the issue open.

The District Court in that case had stated as follows (correctly, in our view, but in *dictum*, by the appellate court's lights) (997 F. Supp. 15, 18 (D. D.C. 1998)):

> The standard of review is de novo and the scope of review is limited to the administrative record unless good cause is shown. The court, however, may make findings of fact which differ from the administrative record. Courts reviewing a final determination of tax exempt status by the IRS are to consider the overall picture presented by the administrative record.

*Accord, The Basic Unit Ministry of Alma Karl Schurig v. Commissioner*, 670 F.2d 1210, 1213 (D.C. Cir. 1982); *Airlie Foundation v. Internal Revenue Service*, 283 F. Supp.2d 58, 62 (D. D.C. 2003); *Big Mama Rag, Inc. v. Commissioner*, 494 F. Supp. 473, 474 (D. D.C. 1979), *rev'd on other grounds*, 631 F.2d 1030 (D.C. Cir. 1980).

*De novo* review, however, does not mean that either normal presumptions or the burden of proof have been put to naught. *Lima Surgical Associates, Inc. v. United States*, 944 F.2d 885 (Fed. Cir. 1991), was a tax refund suit in which plaintiff challenged the Commissioner's

determination that it was not tax-exempt. While not decided under § 7428, the Federal Circuit's discussion of the standard of review is nonetheless instructive (944 F.2d at 888):

> In a case such as this the taxpayer carries a heavy burden indeed. In the first place, as the trial judge noted, an exemption from taxation is an exception from the general rule that gross income to be taxed means all income from whatever source derived. *See* 26 U.S.C. § 61. As a result, exemptions are viewed as matters of grace on the part of the Government, and are construed narrowly; and the taxpayer seeking tax exempt status must prove that it satisfies all of the requirements of the exemption statute. *Weingarden v. Commissioner,* 825 F.2d 1027, 1029 (6th Cir.1987); *Puritan Lawn Memorial Park Cemetery v. United States,* 15 Cl.Ct. 234 (1988). Furthermore, determinations of the Commissioner of Internal Revenue are presumptively correct, *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933), and the Commissioner's understanding of the statute, as expressed in properly enacted regulations, unless unreasonable, is virtually conclusive. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). (In this case, the taxpayer, Lima Trust, does not challenge the Commissioner's power to enact the regulations, but claims to meet them.)

And this Court has stated, in two cases that *were* decided under § 7428, that the Commissioner's determinations on tax exemptions are presumed to be correct. *See*, *St. Matthews Publishing v. United States,* 41 Fed. Cl. 142, 145 (1998); *Church of the Spiritual Technology v. United States*, 26 Cl. Ct. 713, 729 (1992).

2. May the court, under 26 U.S.C. § 7428, issue a declaratory judgment that plaintiff is tax-exempt as of a specified initial qualification date other than the date of plaintiff's initial application for tax exemption?

The answer is no. First, section 7428 provides that the Court has jurisdiction "in a case of actual controversy involving ... a determination ...." The Commissioner made no determination other than his final ruling on the totality of the record. If the Court addresses the question of the organization's status as of a time other than that of the Commissioner's ruling, it has stepped outside § 7428.

Second, the statute provides that no action may be brought unless the organization has exhausted its administrative remedies. § 7428(b)(2).[2/] As a practical matter, this requirement means that the organization must take all reasonable steps to comply with the Service's requests for information. That is, the organization is not entitled to a ruling from the Commissioner – or to seek a declaratory judgment from this Court – until the administrative record is complete. This requirement of completeness suggests that the Court must rule on the organization's status as reflected in the entirety of the administrative record.[3/] The decided cases – again, without explicitly deciding the question – seem consistently to take the view that the Court's function is to review the case on the entirety of the record, and determine whether that record establishes that plaintiff is described in § 501(c)(3). *Foundation of Human Understanding v. Commissioner*, 88 T.C. 1341, 1355 (1987). *See also Animal Protection Institute, Inc. v. United States*, 42 A.F.T.R. 2d (RIA) 5850 (Ct. Cl. Trial Judge's Opinion, 1978) (Philip R. Miller, T.J.).

An organization which files its Form 1023 within 27 months of its formation is treated as having requested a determination retroactively to the date of formation. Treas. Reg. § 1.508-1(a)(2)(i); Rev. Proc. 92-85, 1992-2 C.B. 490, Section 4.[4/] We are aware of no case in which a

---

[2/] Even where the 270 days provided in 7428(b)(2) has passed, and organization must have taken all reasonable steps, in a timely manner, to secure the determination. *See J. David Gladstone Foundation v. Commissioner*, 77 T.C. 221, 230 (1981).

[3/] In *At Cost Services, Inc. v. Commissioner*, T.C. Memo. 2000-328, 80 T.C.M. (CCH) 573 (October 25, 2000), Judge Cohen rejected an attempt by the petitioner to "retract" certain statements made in the course of the administrative proceedings, stating that "we review the administrative record in its entirety." A similar situation, with an identical result, obtained in *The Nationalist Foundation v. Commissioner*, T.C. Memo. 2000-318, 80 T.C.M. (CCH) 507 (October 11, 2000).

[4/] The Regulation requires filing the application within 15 months of the end of the month (continued...)

court has determined, in an initial qualification case, that an organization should be recognized as exempt as of some date other than the date requested in the application. Where an organization believes that it has sufficiently purged itself of disqualifying activities so as to now qualify for exemption, its proper course is to file an application for prospective exemption. *Compare Church by Mail, Inc. v. Commissioner,* T.C. Memo. 1984-349, *aff'd*, 765 F.2d 1387 (9th Cir. 1985), *with Church by Mail v. United States*, 88-2 U.S.T.C. (CCH) P 9625 (D. D.C. 1988). Similarly, the Commissioner's remedy where an organization's activities in practice have become disqualifying is to revoke exempt status back to the point where such activities began. Even where recognition of exempt status resulted from a declaratory judgment unfavorable to the Government, this revocation avenue is open (House Report No. 94-658, 1976-3 C.B. (Vol. 2) 977, 978):

> The judgment of the court in a declaratory judgment proceeding is to be binding upon the parties to the case based upon the facts as presented to the court in the case for the year or years involved. This, of course, does not foreclose Service action for later years (within the limits of the legal doctrines of estoppel and stare decisis) if the governing law or the organization's operations gave changed since the years to which the declaratory judgment applies, or (especially in the case of a new organization) if the organization does not in operation meet the requirements for qualification.

Finally, we must urge that in the context of the present case, any thought of permitting tax exemption prospectively from a chosen date would be wholly without support in the administrative record. The Court appears to entertain the possibility that the purported departure of Mr. Henkell from plaintiff on June 30, 1997, is of critical importance. First, the nature and

---

[4/] (...continued)
in which the organization was created, while the Revenue Procedure provides for an automatic 12-month extension of that period, for a total of 27 months.

extent of Henkell's continued involvement (via surrogates or otherwise) is, at the very least, far from clear. Second, there is very little information in the administrative record about expenditures made after May 1997. This is in part explained by the Service's seizure of most of the plaintiff's funds from August 13, 1997 (AR 2388) to September 1998 (AR 3026-27). However, the record did not close until January 20, 1999, thus providing plaintiff with ample time to explain and document its post-Henkell operations. This plaintiff failed to do. Moreover, even the scant information submitted shows questionable expenditures (expenditures that appear to potentially benefit donors rather than charity) made after June 30, 1997.[5/] Thus, even were it

---

[5/] For instance, there continued to be questionable expenditures made for the Better Life Foundation. While this Foundation submitted an expenditure request in March of 1997, it was not paid until July 1997. As Defendant's Proposed Findings of Fact 66 discusses, this expenditure of approximately $1600 appears to have paid for a vacation trip for two families. (AR 1905-09.) The plaintiff sent the Better Life Foundation a letter stating there had been expenditures for personal benefit to a school and referencing a payment to the E.V. Cain School. (AR 1927.) Nonetheless, there was another $5,000 expenditure to the E.V. Cain School on October 8, 1997. (AR 2706.) Plaintiff asked Music and More what it would do with a "grant" from the Better Life Foundation and paid the $1500 to it on December 17, 1997, despite there being no representation that it would not be used for the personal benefit of the donor's children. (AR 2115-20, 2706.) The plaintiff denied an expenditure request from the Storz Family Foundation that would have paid home schooling expenses (A 2113-14.) and then paid for what appears to be home schooling supplies in April 1998. (AR 2121-25.) There also appear to be expenditures for personal benefit from TLC for the Elderly. (AR 2128, 2126- 2132, 2893.) The Ramirez Foundation paid maintenance fees for a non-income producing time share unit on December 29, 1997. (AR 1680, 2412.) Those funds not consumed by plaintiff's fees purchased a life insurance policy for the Piche Family Foundation on July 9, 1998. (AR 2981.) On March 17, 1998, a tax bill was paid for a property that was allegedly sold in February 1997 and the proceeds contributed to the plaintiff by the Boone Family Foundation. (AR 2299, 2301-02.) In April and July 1998, bills were being paid from the Dayln Foundation account for three properties that were not listed as owned by the plaintiff. (AR 2835-42.) In August 1997, $1310 was paid from the Orphan Angels Foundation to Classic Car Connections to reimburse expenses. (AR 2846.) Personal expenditures also appear to have been made from the Denton Family Foundation account. On June 19, 1998, Department of Motor Vehicle Registration fees were paid. (AR 2738.) On August 11, 1998, the Denton Brothers Ministry was paid out of pocket expenses of almost $6000. (AR 2738.) From November 1997 through February 1998, salary

(continued...)

legally permissible for a court to "pick a date," doing so in the instant case would be singularly inappropriate.

Respectfully submitted,

s/ W. C. Rapp

W. C. RAPP
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*(202) 307-0503*

EILEEN J. O'CONNOR
*Assistant Attorney General*
MILDRED L. SEIDMAN
*Chief, Court of Federal Claims Section*
DAVID GUSTAFSON
*Assistant Chief*

July 18, 2005

s/ David Gustafson
Of Counsel

[5] (...continued)
payments were made to two individuals from the Lifetime Adoption Foundation account. Lifetime Adoptions appears to be a for-profit adoption agency. (AR 2918-19.) Funds were also expended from August 1997 to March 1998 from the Volunteer Corps Community Res. Foundation account as salary payments to the donor and for items that appear to have no charitable purpose. (AR 2949-51.) In October 1997, payments were made from the Ministering Carpenter account for a motor home and a Pontiac. (AR 2363.)